UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\*\*\*

```
FILED                    RECEIVED
ENTERED                  SERVED ON
          COUNSEL/PARTIES OF RECORD

        OCT 1 7 2013

     CLERK US DISTRICT COURT
       DISTRICT OF NEVADA
BY:                        DEPUTY
```

LYDIA VASQUEZ-BRENES, *et al.*

                Plaintiff,

vs.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*

                Defendants.

2:12-cv-001635-JCM-VCF

**ORDER**

Before the court is Defendants Las Vegas Metropolitan Police Department and Officers Sean Miller's Motion to Compel (#27).[1] Plaintiffs Lydia Vasquez-Brenes and Richard Brenes filed an Opposition (#29); and, Defendants filed a Reply (#31).

Also before the court is Defendant Las Vegas Metropolitan Police Department's Motion to Extend Time (#35). Plaintiffs filed an opposition (#37); and, Defendants replied (#39).

**BACKGROUND**

This matter involves Plaintiffs Lydia Vasquez-Brenes and Richardo Brenes' various tort and 42 U.S.C. § 1983 claims against the Las Vegas Metropolitan Police Department ("LVMPD") and Officers Sean Miller, Jeffrey Chamberlin, and Theodore Snodgrass regarding the fatal shooting of Anthony Brenes. (Compl. (#1) at 4–5).

On November 15, 2010, Anthony Brenes was walking with his wife, Lydia Vasquez-Brenes, near the intersection of Desert Inn Road and the Pecos-Mcleod Interconnect in Las Vegas, Nevada. (*Id.*

---

[1] Parenthetical citations refer to the court's docket entry number.

1

at 5:4). According to Plaintiffs, the events culminating in Anthony's death began when Anthony "walk[ed], at a slow pace, in the direction" of Officer Miller. (Pl.'s Opp'n (#29) at 2:25–26). According to Defendants, the events began when Anthony approached the Officers holding and swinging a stick like a weapon and yelling at the Officers "to go ahead and shoot" him. (Def.'s Mot. Compel (#27) at 3:11–13). The parties are in agreement with what happened next: in an effort to subdue Anthony, the Officers deployed their Tasers twice, shot Anthony with bean-bag rounds, and then fatally shot Anthony with a firearm in the chest. (*See id.* at 3:14–18); (Compl. (#1) at 5:4–9). On September 11, 2012, Lydia (Anthony's wife) and Richardo (Anthony's father) filed suit. (*Id.*)

The parties are currently in the midst of discovery. Defendants have propounded interrogatories, requests for admissions, and requests for production of documents. Relying on the psychotherapist-patient privilege recognized by the U.S. Supreme Court in *Jaffee v. Redmond*, 518 U.S. 1, 116 (1996), (*see* Pl.'s Opp'n (#29) at 4), Plaintiffs refuse to answer four interrogatories and one request for production of documents.[2] In response, Defendants move to compel, arguing that Plaintiffs' complaint impliedly waived the psychotherapist-patient privilege by putting Anthony, Lydia, and Richardo's psychological states "in issue." (Def.'s Mot. to Compel (#27) at 3:7–8; 10:23–24; 11:1–2).

Plaintiffs' complaint alleges four causes of action under section 1983 and various state law claims for false arrest, battery, and negligence. (Compl. (#1) at 6–21). Plaintiffs' third section 1983

---

[2] The substance of the interrogatories and request for production, though immaterial to the merits of Defendants' motion, are as follows: "Interrogatory No. 4: Set forth the name and address of each physician consulted by decedent concerning the condition of his health during the last five years, specifying as to each occasion the purpose of which the physician was consulted"; "Interrogatory No. 10: Describe in detail any other mental and physical ailments that may have resulted from or directly chargeable to the alleged incident"; "Interrogatory No. 11: Identify all medical records which support the injuries you allege in your Complaint including in chronological order, the name and address of each doctor and or hospital or clinic which you attended regarding your alleged injuries and any doctor's bills, and/or pharmaceutical bills in which you incurred, if any"; "Interrogatory No. 12: State the name, address and treatment procedure of any and all healthcare facilities with whom you have treated and/or consulted within the last five (5) years to the present"; "Request for Production No. 9: Please produce a signed original of the attached medical release, attached hereto as Exhibit 1." (*See* Def.'s Mot. Compel. (#27) at 5–8).

1  claim, which is a substantive due process claim, seeks damages for, *inter alia*, Lydia and Ricardo's
2  "extreme and severe mental anguish and pain." (*Id.* at 11:10). In the negligence claim, Plaintiffs allege
3  that the LVMPD and Officers negligent acts include, *inter alia*, "the negligent tactics and handling of
4  mentally ill individuals." (*Id.* at 20:26).

5      Between March 29, 2013, and July 3, 2013, the parties unsuccessfully met and conferred.
6  (*See* Exhibit F (#27-1)). Consequently, on August 13, 2013, Defendants filed the instant motion to
7  compel. (Def.'s Mot. Compel (#27)). On October 9, 2013, the court held a hearing on Defendants'
8  motion. (Mins. Proceedings (#40)). During the hearing, Plaintiffs expressed their intent to amend
9  portions of the operative complaint and their expert report. (*Id.*) According to Plaintiffs, these
10  amendments would remove all allegations that predicate Defendants' negligence on their failure to
11  appropriately handle mentally ill individuals. (*Id.*) On October 16, 2013, the parties filed a joint interim
12  status report. (Joint Interim Status Report (#41) at 1). In pertinent part, the Status Report reiterated
13  Plaintiffs intent to file an amended complaint and an amended expert report. (*Id.*)

## LEGAL STANDARD

14
15      Federal Rule of Civil Procedure 26(b)(1) articulates the appropriate scope of discovery and
16  generally permits liberal discovery of relevant information. *See* FED. R. CIV. P. 26(b)(1); *Seattle Times,*
17  *Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Discovery requests are permissible under Rule 26(b)(1) "if the
18
19  discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P.
20  26(b)(1).

21      Rule 26, however, does not permit discovery of privileged information. FED. R. CIV. P. 26(b)(1).
22  In *Jaffee v. Redmond*, 518 U.S. 1 (1996), the U.S. Supreme Court recognized the psychotherapist-patient
23  privilege under Federal Rule of Evidence 501. The Court specifically held that "confidential
24  communications between a licensed psychotherapist and her patients in the course of diagnosis or
25

3

1   treatment are protected from compelled disclosure." *Jaffee*, 518 U.S. at 5. The Court also recognized

2   that this privilege, like the attorney-client privilege, may be waived. *Jaffee*, 518 U.S. at 15, n. 14.

3        If, as here, a party believes the privilege was waived, Federal Rule of Civil Procedure 37 permits

4   that party to compel disclosure of the discoverable information. *See* FED. R. CIV. P. 37(a)(3)(A). The

5   party asserting the privilege and resisting discovery bears the burden of establishing both the existence

6   of the privilege and the absence of waiver. *See Fisher v. United States*, 425 U.S. 391 (1976).

7        Neither the U.S. Supreme Court nor the Ninth Circuit have delineated when exactly a party

8   waives the psychotherapist-patient privilege by claiming emotional distress damages or putting their

9   psychological state "in issue." *See, e.g., E.E.O.C. v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 640 (E.D.

10  Wash. 2011) (discussing this problem). However, this court's review of federal case law[3] has revealed

11  four instructive tests for determining when the psychotherapist-patient privilege is waived. First, the so-

12  called "narrow" approach finds the privilege waived only when a patient places the substance of

13  psychotherapeutic advice, or communications with a psychotherapists, directly at issue. *See Vanderbilt*

14  *v. Town of Chilmark*, 174 F.R.D. 225, 229 (D. Mass. 1997); *Koch v. Cox*, 489 F.3d 384, 390 (D.C. Cir.

15  2007); *Fitzgerald v. Cassil*, 216 F.R.D. 632, 638 (N.D. Cal. 2003).

16  

17        Second, the so-called "broad" approach finds the privilege waived at any point that the plaintiff

18  makes any claim for emotional distress. *See Sarko v. Penn–Del Directory Co.*, 170 F.R.D. 127, 130

19  (E.D. Pa. 1997); *Doe v. City of Chula Vista*, 196 F.R.D. 562, 567 (S.D.Cal.1999).

20

21

---

22  [3] Federal Rule of Evidence 501 governs privileges. The rule does not specify which law of privilege should apply when, as here, the privilege is asserted to both federal question and supplemental state tort claims. *See* FED. R.

23  EVID. 501. The federal courts have, however, consistently held that the federal law of privilege applies to all claims in a federal question case. *See Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992); *Vanderbilt v. Town*

24  *of Chilmark*, 174 F.R.D. 225, 226–27 (D. Mass. 1997) (citing cases from the 2nd, 3rd, 6th, 7th, and 11th circuits so holding); *Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 618 (S.D.Cal.1999) (citing and agreeing with

25  *Vanderbilt* ).

Third, the so-called "middle ground" approach holds that where a plaintiff merely alleges "garden variety" emotion distress—and does not allege a separate tort for the distress, any specific psychiatric injury, or unusually severe distress—the plaintiff has not placed her or his mental condition at issue to justify a waiver of the privilege. *See, e.g.*, *Koch*, 489 F.3d at 390; *Flowers v. Owens*, 274 F.R.D. 218, 223–226 (N.D.Ill.2011) (giving a detailed account of waiver of the psychotherapist-patient privilege, and describing the contours of the doctrine that make the nature of the damages sought relevant to the issue of waiver). If, however, the party alleging emotional distress plans to introduce evidence of psychological treatment in support of their damages claim at trial, then the weight of authority holds that the privilege is waived *See, e.g.*, *Noe v. R.R. Donnelley & Sons*, No. 10 C 2018, 2011 WL 1376968, *1 (N.D.Ill. April 12, 2011) (collecting cases).

Finally, a minority of courts, *see, e.g.*, *Gaines–Hanna v. Farmington Public Schools*, No. 04-cv-74910, 2006 WL 932074, *8 (E.D. Mich. April 7, 2006), have analogized the inquiry of whether the psychotherapist-patient privilege is waived to the inquiry under Federal Rule of Civil Procedure 35(a), which requires a party to submit to a mental examination if their mental or physical condition is "in controversy." *See* FED. R. CIV. P. 35(a). In *Schlagenhauf v. Holder*, 379 U.S. 104 (1964), the U.S. Supreme Court concluded that Rule 35 "requires discriminating application by the trial judge . . . whether the party requesting [an examination] has adequately demonstrated the existence of the Rule's requirements of 'in controversy.'" *Id*. at 118–19. The Court added that Rule 35's requirements "are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy." *Id*. at 118.

**DISCUSSION**

Defendants' assert the following four arguments in support of their motion to compel. First, Defendants contend that Anthony, Lydia, and Richardo's medical and psychotherapeutic records are relevant and, therefore, discoverable. (*See* Def.'s Mot. to Compel. (#27) at 9–10); (Def.'s Reply (#31) at 3–4). Second, Defendants assert that Anthony's medical and psychotherapeutic records should be produced because Plaintiffs' negligence claim is predicated on Defendants' "failure to appreciate [Anthony's] altered mental state due to mental illness." (*See id.* at 3); (Def.'s Reply (#31) at 4). Third, Defendants assert that Lydia and Richardo's medical and psychotherapeutic records should be produced because Plaintiffs seek damages for "intense physical and emotional pain, anguish, distress and despair, and death, including the loss of enjoyment of . . . life." (*See* Def.'s Mot. Compel (#27) at 3:7–8, 10:23–24, 11:1–2). Fourth, Defendants argue Anthony's medical and psychotherapeutic records should be produced because "there are facts suggesting [Anthony] engaged in conduct designed to take his own life by suicide by cop." (*Id.* at 11:3–4). The court addresses each argument below.

**A.     *Defendants' Relevancy Arguments are Unpersuasive***

Defendants' first argument contends that Anthony, Lydia, and Richardo's medical and psychotherapeutic records are discoverable because they are relevant. (*See id.* at 9–10); (Def.'s Reply (#31) at 3–4). With regard to the psychotherapeutic records, Defendants' relevancy argument is correct but insufficient. Federal Rule of Civil Procedure 26 makes relevancy a necessary condition to compel the discourse of medical records. *See* FED. R. CIV. P. 26(b)(1). But where, as here, a privilege is asserted, relevancy alone is insufficient. *See id.* (defining the scope of discoverable information as relevant and nonprivileged information). Accordingly, because psychotherapeutic records are privileged under *Jaffee*, 518 U.S. at 1, Defendants' relevancy arguments alone are not enough to justify an order compelling disclosure of privileged information.

By contrast, there is no physician-patient privilege under federal law that would protect the disclosure of records regarding Plaintiffs' physical condition. *Walen v. Roe*, 429 U.S. 589, 602 n. 28 (1977). Accordingly, the court's inquiry regarding the discoverability of Plaintiffs' general medical records is governed by Rule 26's relevancy standard. Relevancy is broadly construed. *City of Rialto v. U.S. Dept. of Defense*, 492 F. Supp. 2d 1193, 1202 (C.D. Cal. 2007) (defining discoverable information as information that has any possibility that the information sought may be relevant to the claim or defense of any party"). Nonetheless, the court is not persuaded by Defendants' argument that Plaintiffs' general medical records are relevant. Neither Lydia nor Richard allege to have been physically touched, hurt, or affected. (*See generally* Compl. (#1) at 1–22). Similarly, neither Lydia nor Richard made any claim for compensatory damages relating to their physical condition. (*Id.*) Plaintiffs have also not argued that Anthony's medical records are relevant or needed. The court concludes, therefore, that Plaintiffs' general medical records are irrelevant to the parties' claims and defenses.

**B.**    ***Plaintiffs Waived Anthony's Psychotherapist-Patient Privilege***

Defendants next argue that Anthony's psychotherapeutic records should be produced because Plaintiffs' negligence claim is predicated on Defendants' "failure to appreciate [Anthony's] altered mental state due to mental illness." (Def.'s Mot. to Compel (#27) at 3); (Def.'s Reply (#31) at 4); (*see also* Compl. (#1) at 20:26) ("the negligent tactics and handling of mentally ill individuals"). The court agrees.

As discussed above, four tests govern waiver of the psychotherapist-patient privilege. Only under the second test, the so-called "broad" approach, could the court conclude that Plaintiffs did not waive Anthony's privilege. Under the "broad" approach, waiver occurs whenever a plaintiff makes a claim for emotional distress. *See City of Chula Vista*, 196 F.R.D. at 567. Here, the complaint does not assert a

claim for Anthony's emotional distress because he died in the underlying altercation. (*See generally* Compl. (#1) at 6–22).

The court, however, finds that the inquiry into whether Plaintiffs waived Anthony's privilege is best answered by the three other tests. Under the "broad" approach, which the court rejects, a plaintiff would be subjected to waiver whenever the text of a plaintiff's complaint states a *prima facie* claim for emotional distress. *See City of Chula Vista*, 196 F.R.D. at 567. The court is not persuaded that adjudicating every emotional distress claim requires prying into private matters. As articulated by Justice Stevens, the purpose of the psychotherapist-patient privilege is to protect the "atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Jaffee*, 518 U.S. at 11. If the parties' dispute does not require the court's inquiry to intrude into that zone of confidence and trust, then the court should not consider the privilege waived merely because the text of the complaint alleges a claim for emotional distress. The court, therefore, finds that the psychotherapist-patient privilege is waived only when it becomes clear that the plaintiff's action brings communications that were divulged within the "atmosphere of confidence and trust" into the courtroom. The so-called "narrow" approach, "middle ground" approach, and inquiry under Rule 35(a) meet this requirement.

Applying these tests, the court finds that Plaintiffs' waived Anthony's privilege because they predicated a negligence claim on Defendants "negligent tactics [for] handling . . . mentally ill individuals." (*See* Compl. (#1) at 20:26). Plaintiffs make two arguments in opposition. First, Plaintiffs assert that their negligence claim does not waive Anthony's privilege because Plaintiffs will stipulate to not: (1) testify that Plaintiffs sought or obtained psychological treatment for emotional distress suffered as a result of Defendants' conduct; (2) rely on the testimony of a treating psychotherapist or any other expert to establish the emotional distress suffered by Plaintiffs; (3) allege that the conduct by Defendants

8

1  caused any specific disabilities or mental or medical abnormalities; or (4) claim that Plaintiffs had any

2  pre-existing conditions that were exacerbated by Defendants' conduct. (*See* Pl.'s Opp'n (#29) at 6–7).

3        The court, however, is not persuaded that the stipulation prevents Plaintiffs from waving

4  Anthony's privilege. Plaintiffs cannot claim that Defendants should have known how to handle

5  Anthony's mental illness without first introducing privileged information demonstrating that Anthony

6  was, in fact, mentally ill and that his condition would have affected the conduct of a reasonable officer.

7  Plaintiffs' claim, therefore, brings communications that Anthony made within the "atmosphere of

8  confidence and trust" into the courtroom. *See Vanderbilt*, 174 F.R.D. at 229 (discussing the "narrow"

9  approach and holding that wavier occurs when the "substance of psychotherapeutic advice" is at issue);

10  *Koch*, 489 F.3d at 390 (discussing the "middle ground" approach and stated that wavier occurs when

11  evidence of psychological treatment is introduced).

12        Additionally, the court is not persuaded that Plaintiffs' proposed stipulation would fairly or

13  adequately resolve the discovery dispute because the stipulation permits Plaintiffs to use Anthony's

14  privilege as both as sword, which alleges that Defendants should have known better in light of the

15  illness, and a shield, which prohibits Defendants from accessing information regarding Anthony's

16  psychological condition. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (citing

17  *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (stating that privileges cannot be used as

18  both a sword and a shield)).

19        Plaintiffs' second argument against wavier arose during the court's October 9, 2013, hearing.

20  (Mins. Proceedings (#40)). Plaintiffs stated that they intend to amend their complaint and remove all

21  allegations relating to the Defendants' negligence in handling mentally-ill individuals. (*Id.*); (*see also*

22  Joint Interim Status Report (#41) at 1) (reiterating Plaintiffs intent to amend). According to Plaintiffs,

23  discovery has revealed that this action is in essence an excessive force action under the Fourth

9

Amendment. (Mins. Proceedings (#40)). The only issue, therefore, is the objective "reasonableness" of the force deployed by Officer Miller when faced with an individual carrying a cane. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (discussing the objective standard of reasonableness under the Fourth Amendment). This inquiry, Plaintiffs argue, does not bring Anthony's condition into the courtroom.

The court agrees with Plaintiffs' argument, but only theoretically. The issue that Plaintiffs raise is nonjusticiable because the amended complaint has not been filed and is not ripe for review. *See Abbott Lab. v. Gardner*, 387 U.S. 136, 148–149 (1967); *accord, Ohio Forestry Assn., Inc. v. Sierra Club*, 523 U.S. 726, 732–733 (1998) ("Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements'"). The court, therefore, rejects Plaintiffs' second argument against wavier because it is not properly before the court.

Accordingly, the court reserves judgment on the question of whether Plaintiffs waived Anthony's psychotherapist-patient privilege. As discussed below, Plaintiffs have thirty days to amend their complaint. If Plaintiffs do not amend within thirty days or if the amended complaint still predicates Defendants' negligence on Anthony's mental illness, Defendants may renew their motion to compel at that time.

**C.    *Plaintiffs Did Not Waive Lydia or Richardo's Psychotherapist-Patient Privilege***

Defendants' third argument asserts that Lydia and Richardo's medical and psychotherapeutic records should be produced because Plaintiffs seek damages for "intense physical and emotional pain, anguish, distress and despair, and death, including the loss of enjoyment of . . . life." (*See* Def.'s Mot. Compel (#27) at 3:7–8, 10:23–24, 11:1–2); (Compl. (#1) at 18:22–26). In response, Plaintiffs argue that Lydia and Richardo are merely seeking "garden variety" emotional distress damages and that neither

Lydia nor Richardo allege to have required psychological treatment as a result of Defendants' conduct. (Pl.'s Opp'n (#29) at 4–9); (*see also* Mins. Proceedings (#40)).

As discussed above, under the "broad" approach, waiver occurs whenever a plaintiff makes a "claim" for emotional distress. *See City of Chula Vista*, 196 F.R.D. at 567. Here, although Lydia and Richardo have not stated a cause of action of emotional distress, both seek damages "intense physical and emotional pain, anguish, distress and despair, and death, including the loss of enjoyment of . . . life." (Compl. (#1) at 18:22–26). Under this test, Lydia and Richardo arguably waived their psychotherapist-patient privilege. *See* BLACK'S LAW DICTIONARY (9th ed. 2009) (defining claim as "the aggregate of operative facts giving rise to a right enforceable by a court").

Nonetheless, the court is not persuaded that every emotional distress claim warrants prying into privileged matters. The contours of the court's inquiry, and not the text of the plaintiff's complaint, determine whether the privilege is waived. *See, e.g., Vanderbilt*, 174 F.R.D. at 229; *Koch*, 489 F.3d at 390. Using the so-called "narrow" approach, "middle ground" approach, and inquiry under Rule 35(a) as guideposts, the psychotherapist-patient privilege is waived only when it is clear that the plaintiff's action brings communications that were divulged within the "atmosphere of confidence and trust" into the courtroom.

The court finds that Lydia and Richardo have not brought such communications into the courtroom. Although the text of Plaintiffs' complaint states that Lydia and Richardo seek damages for "extreme and severe mental anguish and pain," the court finds that these damages are "garden variety" emotional distress damages. *See id.* (stating that a plaintiff does not waive the privilege if s/he does not allege a separate tort for the distress, any specific psychiatric injury, or unusually severe distress). Extreme and severe mental anguish is, after all, foreseeable and typical for family members who have

11

1   lost a husband or son. (Compl. (#1) at 11:10). Neither the court nor Defendants need to examine Lydia

2   or Richardo's private records to determine whether they are suffering from such distress.

3         **D.**        ***Defendants' Affirmative Defense Cannot, as a Matter of Law, Waive Plaintiffs'***
                      ***Privilege***

4         Defendants' final argument contends that Anthony's medical and psychotherapeutic records are

5   discoverable because "there are facts suggesting [Anthony] engaged in conduct designed to take his own

6   life by suicide by cop." (Def.'s Mot. Compel (#27) at 11:3–4). Because the court found that Plaintiffs'

7   waived Anthony's psychotherapist-patient privilege by predicating a negligence claim on Defendants'

8   "negligent tactics and handling of mentally ill individuals," (*see* Compl. (#1) at 20:26), this argument is

9   moot.

10        The court notes, however, that this argument is also meritless. It is well settled that only the

11  privilege-holder can waive the privilege. *See Upjohn Co. v. United States*, 449 U.S. 383 (1981); *Fisher*

12  *v. United States*, 425 U.S. 391 (1976). If the court accepted Defendants' argument, privileges would be

13  worthless and parties could discover confidential information by merely pleading a cause of action or

14  affirmative defense that is relevant to the privileged information.

15        ACCORDINGLY, and for good cause shown,

16        IT IS ORDERED that Defendants Las Vegas Metropolitan Police Department and Officers Sean

17  Miller's Motion to Compel (#27) is DENIED in part and DENIED AS UNRIPE in part. Defendants'

18  motion to compel Plaintiffs' medical records is DENIED. Defendants' motion to compel Anthony

19  Brenes' psychological records is DENIED AS UNRIPE. Defendants' motion to compel Lydia Brenes

20  and Richardo Brenes psychological records is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Extend the Discovery Cutoff Date by 90 Days (#35) is GRANTED. The discovery cutoff date is extended from October 1, 2013, until January 15, 2014.

IT IS FURTHER ORDERED that Plaintiffs have until November 18, 2013, to seek leave to file an amended complaint.

IT IS SO ORDERED.

DATED this 17th day of October, 2013.


_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE